## APPEAL OF CROWELL CORPORATION.

Docket No. 5411.  Promulgated December 8, 1926.

1. VALUATION OF AN INVENTION FOR INVESTED CAPITAL.—The petitioner's exclusive license to use a patentable process *held* to have had a cash value of $25,000 at the time paid in for stock.

2. DEDUCTION FOR EXHAUSTION.—A taxpayer having a license for the exclusive use of a patentable process can not claim a deduction for exhaustion of the value of such license during a taxable period ended prior to the issuance of the patent.

*J. L. Andrews, C. P. A.*, for the petitioner.
*John D. Foley, Esq.*, for the Commissioner.

The petitioner complains of a deficiency letter dated May 18, 1925, asserting a deficiency in income and profits tax in the amount of $1,566.33 for the calendar year 1919.

The petitioner asserts errors on the part of the Commissioner as follows:

(1) Failure to allow the cash value of certain patents and inventions held under exclusive license and acquired for stock.

(2) Failure of the Commissioner to allow deduction for exhaustion on account of one of such inventions.

(3) As an alternative for the allowance of the value of such patents and inventions as part of invested capital the petitioner claims a right to have its tax liability determined under section 328 of the Revenue Act of 1918.

### FINDINGS OF FACT.

The petitioner is a New York corporation with its principal office at Brooklyn.

The Lang & Gross Manufacturing Co., a corporation, was organized in 1906 and was engaged in the manufacture and sale of gummed cloth tape. Charles H. Crowell became associated with the said Lang & Gross Manufacturing Co. in 1911 when he acquired one-third of the outstanding capital stock. In 1917, Crowell was the owner of three patents and six applications for patents pertaining to the gummed paper and tape industry. On March 23, 1917, the said Crowell granted the Lang & Gross Manufacturing Co. a license for the exclusive use of the inventions and processes covered by said patents and applications for patents, for which license the said corporation issued to him $80,000 par value of its capital stock. Crowell retained the ownership of the patents and processes. Soon thereafter the Lang & Gross Manufacturing Co. changed its name to Crowell Corporation.

It was conceded that all the patents and the applications for patents, with the exception of one, as hereinafter described, had not been developed or put to practical tests. Included in the licenses granted to the petitioner was the exclusive right to use one certain new process for producing stronger gummed cloth tape and eliminating a shrinkage in the cloth used. This invention, or process, at the time it was paid in for stock, was protected by an application for a patent. This patent was later issued on March 1, 1921, as patent No. 1370413.

By the use of this new process the petitioner was enabled to reduce the time required in producing gummed tape from cloth from a period of six to eight weeks to a period of two to four days. The new process also eliminated a shrinkage of the cloth and saved four or five inches in a wide yard of 38 inches, or of approximately 10 per cent of the material used. The saving in the process of manufacture effected by the use of this process was not less than one cent per yard of material, and the petitioner used approximately 150,000 yards of cloth per month.

This patentable process at the time it was paid in for the stock of the taxpayer corporation had a cash value of $25,000.

The Commissioner, after eliminating the capital value of this process, found that the petitioner, for the calendar year 1919, had

an average invested capital of $80,397.46, a net taxable income of $27,296, upon which he computed excess-profits tax of $5,816.14, total tax liability $7,764.13.

OPINION.

TRUSSELL: The record of this case clearly establishes the fact that the use of the patentable process here under consideration in the petitioner's business resulted in a reduction in the cost of manufacturing of a large part of the goods produced and sold in the course of the petitioner's business. This reduction in the cost of manufacturing must necessarily be, and was, reflected in the net profits of the business, and we are of the opinion that the record supports the finding that this process had at the time paid in for stock a cash value of $25,000.

Up to the close of the taxable year here under consideration the patent under this process had not been issued, and therefore the period of patent monopoly had not yet begun to run. The record shows no basis upon which a deduction for exhaustion of the capital value of this process can be computed and therefore no such deduction can be allowed.

We are further of the opinion that the record fails to establish any such abnormality either of invested capital or net income as to require the application of section 328 of the Revenue Act of 1918.

> *The deficiency will be redetermined in accordance with the foregoing findings of fact and opinion upon 15 days' notice pursuant to Rule 50, and judgment will be entered in due course.*

GREEN and TRAMMELL dissent.